```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

HEATHER TYLER                          )
                                       )
        Plaintiff,                     )
                                       )       CIVIL ACTION NO.
     v.                                )       17-10272-DPW
                                       )
SUPREME JUDICIAL COURT OF              )
MASSACHUSETTS, Hon. Ralph D. Gants,    )
Hon. Elspeth B. Cypher, Hon.           )
Barbara A. Lenk, Hon. Scott L.         )
Kafker, Hon. Frank M. Gaziano, Hon.    )
David A. Lowy, Hon. Kimberly S.        )
Budd, in their official capacities;    )
and MAURA HEALY, Attorney General      )
for the Commonwealth, in her           )
official capacity,                     )
                                       )
                                       )
        Defendants.[1]                 )


                       MEMORANDUM AND ORDER
                         February 20, 2018

    Faced with an adverse ruling from the Supreme Judicial

Court of Massachusetts regarding a federal constitutional claim,

Plaintiff did not seek review in the Supreme Court of the United

---

[1] The caption identifying the defendants is set forth as it appears in Plaintiff's complaint with some technical corrections. In the time since Plaintiff filed her suit, Justices Margot Botsford and Geraldine S. Hines, two of the originally named defendants, retired from the bench. They were succeeded respectively by Justices Elspeth B. Cypher and Scott L. Kafker. Pursuant to Fed. R. Civ. P. 17(d), I ORDER that Justices Cypher and Kafker be substituted for Justices Botsford and Hines and the caption above reflects that substitution. Additionally, in the substituted caption, I have used the names of the justices as set out on the SJC website.

States.  Rather, she filed this suit against the justices of the Commonwealth's highest court and the Attorney General of Massachusetts in an "inferior"[2] court of the federal judicial system.

Plaintiff alleges that the state court decisions violate her rights under the Fourth and Fourteenth Amendments of the United States Constitution by forcing her to be involved over an extended period of time in family court proceedings with Jamie Melendez, a man who impregnated her when she was fourteen. Melendez pled guilty to four counts of statutory rape arising from the relationship.  Plaintiff requests that I declare the Supreme Judicial Court's decision unconstitutional and forbid all courts in the Commonwealth from granting persons convicted of rape parental rights over any children born as a result of their criminal acts.

---

[2] The term "inferior," of course, is the adjective deployed by the Founders in the judicial branch article of the United States Constitution.  U.S. CONST., art. III, § 1, to describe federal courts subordinate to the Supreme Court.  This eighteenth century usage is plainly meant to denote hierarchy not quality. In the context of this case, the usage serves to emphasize that the American federal structure is supported by two largely independent and parallel judicial systems.  For both of these systems, the last word on any issue of federal law is provided by the Supreme Court of the United States, generally after courts subordinate to it in either or both the federal and state systems have ruled on such an issue. *See generally* U.S. CONST. art. VI, § 1, cl.2 ("Judges in every State shall be bound" by the "Constitution, and Laws of the United States . . . made . . . under the Authority of the United States.").

Well-established legal doctrine governing the respective roles of the state and the federal judicial systems compels me to dismiss Plaintiff's complaint. The complaint cannot pass over the threshold for addressing her claims in this court. The *Rooker-Feldman* doctrine[3] prevents consideration because they present a dispute brought by an unsuccessful litigant in the state courts seeking to have a lower federal court review and reject a state court judgment rendered before the federal litigation commenced.[4] *See generally Exxon Mobil Corp.* v. *Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005).

## I. BACKGROUND

I recite as background the facts as alleged in Plaintiff's complaint and in public judicial records of which I take note. Plaintiff became pregnant in 2009 at age fourteen and gave birth to her child in October 2010. In 2011, Melendez pled guilty in the Commonwealth's Norfolk Superior Court to statutory rape of

---

[3] The doctrine bears the name of two Supreme Court cases in which it was developed, *Rooker* v. *Fid. Tr. Co.*, 263 U.S. 413 (1923) and *D.C. Ct. of App.* v. *Feldman*, 406 U.S. 462 (1983). *See generally Exxon Mobil Corp.* v. *Saudi Basic Indus. Corp.*, 544 U.S. 280, 284-85 (2005) (tracing development of doctrine).

[4] Other legal principles, which I don't reach because the *Rooker-Feldman* doctrine fully bars jurisdiction in this court, would also appear variously to prevent, impede, or deter pursuit of Plaintiff's claims in this court. For example, the doctrine of *Burford* abstention counsels against resolving Plaintiff's claims because they implicate difficult questions of domestic relations and criminal justice public policy which have been and will continue to be addressed by the Commonwealth of Massachusetts through its own courts and legislature.

3

the plaintiff and was sentenced to sixteen years of probation. As conditions of probation, the sentencing judge ordered Melendez to acknowledge paternity of the child, to support the child financially, and to abide by any orders of support issued by the Commonwealth's Probate and Family Court.

Plaintiff has consistently objected to conditions of Melendez's probation. After seeking in May 2012 in Norfolk Probate and Family Court to establish paternity and child support by Melendez, she learned in June 2012 that Melendez sought to obtain visitation rights with the child. Plaintiff, who was at that time not represented by counsel, filed an action in Probate and Family Court to obtain child support from Melendez.[5]

In August 2012, Plaintiff sought in the Superior Court to revise the conditions of Melendez's probation and thereby displace continuing Probate and Family Court jurisdiction. She requested that Melendez be required to pay criminal restitution, rather than child support, in order to relieve her of the burden of engaging in Probate and Family Court proceedings with him. Plaintiff sought to avoid the prospect of an unwanted sixteen

---

[5] Plaintiff alleges the clerk of the Probate and Family Court coerced her into filing the action when the clerk told Plaintiff she had "no choice" but to file. Although I accept Plaintiff's allegation as true, I do not find the alleged circumstance to be relevant to my determination of this case.

4

year relationship with Melendez under which the Probate and Family Court would supervise and adjust respective responsibilities for the child.

While Plaintiff's motion was pending in the Superior Court, she filed a petition with a single justice of the Massachusetts Supreme Judicial Court pursuant to G.L. c. 211, § 3, requesting that the single justice order the Superior Court to rule on her motion and vacate the challenged portion of Melendez's probation conditions. Thereafter, the Superior Court denied Plaintiff's motion and the single justice rejected Plaintiff's petition. The Supreme Judicial Court affirmed the single justice's denial of relief in June 2013. *H.T.* v. *Commonwealth*, 989 N.E.2d 424 (Mass. 2013).

In August 2013, Plaintiff filed suit in this court under 42 U.S.C. § 1983, raising the same challenge to Melendez's probation conditions she had raised in state court. Judge Stearns dismissed Plaintiff's suit on the grounds that the Eleventh Amendment barred her claims and that the doctrines of *Burford* abstention and of *Younger* abstention counseled against exercising jurisdiction. *Tyler* v. *Massachusetts*, 981 F. Supp. 2d 92, 95-97 (D. Mass. 2013). Judge Stearns observed that Plaintiff was not without an appellate remedy in the state courts:

> As the Single Justice pointed out, her remedy—if one need be sought—is an appeal from any order eventually entered by the Probate and Family Court that plaintiff believes to impinge on her rights under the United States Constitution or the Massachusetts Declaration of Rights, rights which she is free to assert in the Probate Court proceeding.

*Id.* at 97.

Shortly after Judge Stearns dismissed her federal claims, Plaintiff returned to Probate and Family Court and moved to vacate that court's jurisdiction or, in the alternative, to terminate Melendez's potential parental rights. The court denied the motion to vacate jurisdiction and, after an evidentiary hearing, denied Melendez visitation rights and required him to pay weekly child support of $110.00.

The Appeals Court affirmed. *H.T.* v. *J.M.*, 65 N.E.3d 31 (Table), 2016 WL 7046435 (Mass. App. Ct. 2016). The Appeals Court held that the Probate and Family court had jurisdiction to adjudicate parental rights in this case pursuant to G.L. c. 209C, which grants the Probate and Family Court "exclusive jurisdiction to make determinations regarding custody and visitation in a paternity proceeding." *Id.* at *2. The court noted that "nothing in the language of G.L. c. 209C expressly limits its applicability solely to children born as a result of lawful intercourse." *Id.*

The court also discussed a 2014 amendment to G.L. c. 209C, § 3(a), which expressly provides that a court may grant

6

visitation rights to a parent convicted of statutory rape if certain conditions are met. *Id.* at *2 & n.8. Although the Appeals Court did not decide whether the 2014 amendment governed Plaintiff's case, it found the amendment reflected the legislature's recognition "that the Probate and Family Court has jurisdiction to adjudicate the parental rights of a parent convicted of statutory rape." *Id.* at *2. Finally, the court rejected Plaintiff's arguments that public policy favored vacating jurisdiction, finding that it "would be inconsistent with 'the declared public policy of this Commonwealth that dependent children shall be maintained 'as completely as possible' from the resources of their parents.'" *Id.* at *3 (quoting *L.W.K.* v. *E.R.C.*, 735 N.E.2d 359, 366 (Mass. 2000)).

The Supreme Judicial Court denied Plaintiff's application for further appellate review on January 26, 2017. *H.T.* v. *J.M*, 75 N.E.3d 1130 (Mass. 2017). Plaintiff did not seek a writ of certiorari from the United States Supreme Court. Rather, she filed her complaint in this court on February 24, 2017.

## II. ANALYSIS

In themes and variations, Plaintiff alleges the Supreme Judicial Court's decision violates her federal constitutional rights under the Fourteenth Amendment to the United States Constitution. Count I, which claims deprivation of rights under the Fourteenth Amendment — incorporating the Fourth Amendment —

7

to the United States Constitution, asserts that "The Supreme
Judicial Court's ruling threatens Plaintiff's rights by exposing
Plaintiff to an unlawful restraint on her liberty and a seizure
of her person." Count II, which is based on the Fourteenth
Amendment's Due Process Clause, states that "The Supreme
Judicial Court's ruling threatens Plaintiff's liberty and
privacy by forcing her to participate in [an] unwanted sixteen-
year family court proceeding." Count III, which claims a
violation of Plaintiff's rights under the Fourteenth Amendment's
Equal Protection Clause, declares that "The Supreme Judicial
Court's decision violates Plaintiff's equal protection rights
because it subjects her and other females to different,
inadequate and disparate legal protection on the basis of sex."

A judge of a federal district court does not have subject-
matter jurisdiction over such claims in this setting. Under the
*Rooker-Feldman* doctrine, federal district courts lack authority
to hear "cases brought by state-court losers complaining of
injuries caused by state-court judgments rendered before the
district court proceedings commenced and inviting district court
review and rejection of those judgments." *Exxon Mobil Corp.*,
544 U.S. at 284. In essence, the *Rooker-Feldman* doctrine
establishes that federal district courts may not become
appellate courts to review adverse state court decisions. *Id.*
at 283; *see also Davison* v. *Gov't of Puerto Rico-Puerto Rico*

*Firefighters Corps.*, 471 F.3d 220, 223 (1st Cir. 2006) ("[T]he proper forum for challenging an unlawful state court ruling is the United States Supreme Court, on appeal of the highest state court's final judgment.").

After Plaintiff filed this case, the First Circuit reaffirming these basic principles, upheld dismissal of a § 1983 claim on *Rooker-Feldman* grounds in a similar setting. In *McKenna* v. *Curtin*, the plaintiff alleged that Rhode Island judicial officers and court administrators, including five named Rhode Island Supreme Court justices, violated his federal rights by suspending his license to practice law; the plaintiff sought a stay of his allegedly unlawful suspension as relief. 869 F.3d 44 (1st Cir. 2017). The First Circuit held the *Rooker-Feldman* doctrine barred consideration of the plaintiff's claims because he "(1) complains of a personal injury arising from the Rhode Island Supreme Court's suspension order, and (2) asks the district court to countermand that order," making his claims "precisely the 'functional equivalent of an appeal' that the *Rooker-Feldman* doctrine forbids." *Id.* at 48 (quoting *Badillo-Santiago* v. *Naveira-Merly*, 378 F.3d 1, 6 (1st Cir. 2004)).

Under this reasoning, Plaintiff's claims here cannot elude application of the *Rooker-Feldman* doctrine. Each of Plaintiff's claims complains of personal injuries caused by the Supreme Judicial Court's ruling itself. She filed this case only after

9

and as a result of the Supreme Judicial Court's final judgment. *See generally Federacion de Maestros de Puerto Rico* v. *Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 24 (1st Cir. 2005) ("[W]hen the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved, then without a doubt the state proceedings have 'ended.'"). Plaintiff cannot restyle and recommence litigation which has reached finality in order to pursue proceedings in the lower federal courts. *See McKenna*, 869 F.3d at 48 ("Although McKenna attempts to clear this jurisdictional hurdle by reframing his case as a 'public law' challenge, he is felled by his own complaint. McKenna's bald assertions that the Rules of Professional conduct are 'unconstitutional,' and that the defendants lacked 'authority' to discipline him, are insufficient to raise a facial challenge when <u>all</u> of the allegations in his complaint concern the constitutionality of the rules <u>as applied to him</u>. As such, adjudicating the separation of powers issue McKenna raises would necessarily require reviewing the merits of the Rhode Island Supreme Court's decision, thus violating the *Rooker-Feldman* doctrine.").

Plaintiff's prayer for relief seeks to have me declare the Supreme Judicial Court's decision unconstitutional and prevent the defendants from exercising jurisdiction in similar circumstances in the future, thereby directly inviting me to

review and reverse the Supreme Judicial Court's judgment.[6] That is relief only the Supreme Court of the United States can provide in these circumstances given the prior travel of this litigation.

Because the *Rooker*-Feldman doctrine divests me of subject-matter jurisdiction to consider any of Plaintiff's claims, I will grant Defendants' motion to dismiss. And because this decision is jurisdictional and entirely disposes of the case, I

---

[6] I note Plaintiff argues that the federal constitutional claims she pressed in state court were never actually addressed there. However, "[f]ederal courts' application of the *Rooker-Feldman* doctrine 'does not depend on what issues were actually litigated in the state court.'" *Miller* v. *Nichols*, 586 F.3d 53, 59 (1st Cir. 2009) (quoting *Maymo-Melendez* v. *Alvarez-Ramirez*, 364 F.3d 27, 33 (1st Cir. 2004)). Rather, it comes into play "whenever 'parties who lost in state court . . . seek[] review and rejection of that judgment in federal court.'" *Id.* (quoting *Puerto Ricans For P.R. Party* v. *Dalmau*, 544 F.3d 58, 68 (1st Cir. 2008)). In any event, a review of the record indicates that the state courts did consider her federal constitutional claims, but did not view them as significant enough to justify any written analysis. When it affirmed the Probate and Family Court's judgment, the Appeals Court observed in a footnote that "[t]o the extent that we do not address other contentions made by the mother, 'they have not been overlooked. We find nothing in them that requires discussion.'" *H.T.*, 2016 WL 7046435, at *3 n.10 (quoting *Dep't of Revenue* v. *Ryan R.*, 816 N.E.2d 1020, 1027 (Mass. App. Ct. 2004)). Consequently, Plaintiff's deployment of *Sheehan* v. *Marr*, 207 F.3d 35, 40-41 (1st Cir. 2000), in support of her argument is unavailing. In *Sheehan*, the plaintiff did not have a state court vehicle to present his federal discrimination claims in the prior state court proceedings. *Id.* By contrast, Plaintiff here specifically chose to use an available state court vehicle to raise her federal claims.

do not consider the other independent bases for the defendant's motion to dismiss. *See supra* note 4.

### III. CONCLUSION

For the reasons discussed more fully above, I grant Defendants' [Dkt. No. 7] motion to dismiss and direct the Clerk to enter final judgment.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE